**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

SHAHEEN SHAFII, SR.,

                     Plaintiff,

v.                                        CIVIL ACTION NO.   2:26-cv-00226

CITY OF CHARLESTON,
WEST VIRGINIA, et al.,

                     Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *City of Charleston Defendants' Motion to Dismiss Plaintiff's First Amended Verified Complaint* (Document 23), the *Memorandum in Support of the City of Charleston Defendants' Motion to Dismiss Plaintiff's First Amended Verified Complaint* (Document 24), and the *Plaintiff's Response in Opposition to City Defendants' Motion to Dismiss the First Amended Verified Complaint* (Document 27), as well as the *First Amended Verified Complaint for Emergency Injunctive, Declaratory, & Compensatory Relief Under 42 U.S.C. § 1983* (Document 19) and the accompanying exhibits.   For the reasons stated herein, the Court finds the motion to dismiss should be granted.

**FACTUAL BACKGROUND[1]**

The Plaintiff, Shaheen Shafii, Sr., sought to run as a 2026 mayoral candidate for the City of Charleston.   He filed this action on March 27, 2026, and named the following Defendants: the

---

[1] Although the Plaintiff has alleged conclusions and set forth legal argument throughout the Amended Complaint, the Court has accepted only the factual allegations as true and limited its analysis to the Amended Complaint and the integral documents as required by Rule 12(b)(6).

City of Charleston, West Virginia, Amy Goodwin,[2] Mayor of the City of Charleston, Miles Cary, II, City Clerk for the City of Charleston, and the Kanawha County Clerk's Office.   The Plaintiff challenges his exclusion from the ballot for the May 12, 2026 primary election, pursuant to 42 U.S.C. § 1983, as a violation of the First and Fourteenth Amendments.

On January 31, 2026, the statutory deadline for filing,[3] the Plaintiff tendered to UPS[4] a completed Municipal Candidate's Certificate of Announcement, for the office of mayor, to be delivered to the City of Charleston ("City").   Included with his filing was the required filing fee in the form of a check for $1,250.00, drawn on Huntington Bank by Cheryl Caruthers, the Plaintiff's duly appointed attorney-in-fact.   The Plaintiff's filing was "received and stamped 'RECEIVED FEB 03 2026 OFFICE OF CITY CLERK' by the City Clerk's office," and the Plaintiff received a filing receipt dated February 3, 2026.   (Am. Compl. at ¶ 18, citing Exhibits C, O.)   The Plaintiff also received the official candidate compliance packet and was instructed to file the Ethics Financial Disclosure Statement within 10 days of filing for office, which he timely filed. The City listed the Plaintiff as a mayoral candidate on its website, and "the City's 2026 Election Information webpage publicly identified Plaintiff under 'Candidate Updates' as 'Shaheen Shafii, Sr. (R)' for Mayor." (Am. Compl. ¶ 27)[5]

---

[2] The Plaintiff named Amy Goodwin for her role in "personally direct[ing] City Homeland Security Director Chad Jones to obtain an intelligence briefing on Plaintiff from Charleston Police Department Assistant Chief Duane Fields," prior to the Plaintiff filing his candidacy for Mayor, and because she "is a direct beneficiary of the ballot access denial."   (Am. Compl. at ¶ 10, 13.)

[3] *See* W. Va. Code § 3-5-7(c).

[4] The Plaintiff indicates that he chose to deliver his certificate of announcement and check via UPS rather than hand-delivery due to the issuance of a two-year Personal Safety Order by the Kanawha County Circuit Court, prohibiting the "Plaintiff from entering or approaching City Hall."   (Am. Compl. at ¶ 15.)   The City initially questioned the Plaintiff's use of UPS, rather than USPS, as a filing method but ultimately decided to accept the Plaintiff's filing after discussing the matter with Lisa Blake, Senior Elections Specialist at the West Virginia Secretary of State's Office, who confirmed that the filing could be accepted "because UPS tracking confirmed it was 'dropped off on the 31st.'" (Am. Compl. at ¶ 22, quoting Exhibit A.)

[5] The City removed the Plaintiff's name from its website by April 5, 2026.   (Am. Compl. at ¶ 27.)

The City's bank made an initial attempt to clear the Plaintiff's check on February 6, 2026, and resubmitted it on February 10, 2026.   Due to insufficient funds, the check was returned to the City Treasurer on February 12, 2026.   On February 17, 2026, the Deputy City Clerk, Nikki Smith, emailed the Kanawha County Clerk's Office stating that she had "just been informed that a check from a candidate has bounced" and asked how to proceed.  (Document 19-1, Exhibit T.)   The Kanawha County Clerk's Office responded that the decision was one that "the City can make," but suggested that the City "contact the person and have them issue payment again by cash or money order."[6]   (*Id.*)   Rather than contact the Plaintiff by email or phone, the City mailed a letter to the Plaintiff, providing notice of the returned check on February 19, 2026.[7]   The Plaintiff, however, did not receive the letter until February 26, 2026, two days after the ballot position drawing for the primary election.   As a result, his name was not included in the February 24, 2026 ballot drawing results.[8]

The letter the Plaintiff received from the City explained that his filing fee was unpaid and that "[a]ll Certificate of Announcements and filing fees were required to be paid not later than January 31, 2026."   (Document 19-1, Exhibit G.)   It also noted that the filing instructions provided that "[a] personal check is generally accepted, but if your check is returned for lack of funds, unsigned or does not contain sufficient information, your candidacy will not be certified."

---

[6] The General Counsel for the Secretary of State's Office also sent an email to the City explaining the relevant code sections but clarified that "because this is a municipal election, the decision is ultimately up to the municipality on how to handle this issue."   (Document 19-1, Exhibit U.)

[7] The Plaintiff alleges several anomalies with the mailing of the February 19, 2026 dated notice, including the sender and recipient information appearing only on the undetached green certified mail card, the tracking number not validating in the USPS tracking system, Andrea McClure, the City's Information Systems Coordinator, being the last individual with physical custody of the notice envelope, and postal workers indicating that USPS was never in custody of the notice envelope.   (Am. Compl. at ¶ 40.)

[8] The results of the ballot drawing show Brian Hunt as the sole candidate for Mayor on the Republican ballot and Martec "Tec" Washington and Amy Goodwin as candidates for Mayor on the Democratic ballot.   (Document 19-1, Exhibit S.)

(*Id.*)  On March 5, 2026, the Plaintiff sent a letter to the City offering to have the $1,250 filing fee delivered immediately.   That same day, counsel for the City responded and explained that because the "personal check was returned for insufficient funds to the City of Charleston after the filing deadline of January 31, 2026. . . your candidacy was unable to be certified."  (Document 19-1, Exhibit H.)

The Plaintiff initiated a FOIA request for documents pertaining to all prior instances where a candidate's filing fee check was returned for insufficient funds.   On March 18, 2026, he received a response which indicated that a 2026 candidate for Municipal Court Judge, Matthew Smith, had a check returned on January 22, 2026.   (Document 19-1, Exhibit M.)   Documents also included a notice issued by the City Treasurer and dated January 28, 2026, which notified Mr. Smith that his $400 payment had been dishonored and that he had "ten days from the date of this notice to tender payment of" $415, which included a $15 service charge.   (Document 19-1, Exhibits R.) The Plaintiff did not receive a notice to cure like that provided to Mr. Smith.[9]   Mr. Smith tendered payment on February 2, 2026, the next business day after receiving notice, and was subsequently placed on the Democratic ballot for Municipal Court Judge.

The Kanawha County Clerk's Office, the office responsible for distributing ballots for all Kanawha County elections, including the municipal primary election for the City of Charleston,

---

[9] In an affidavit, the City Treasurer explained that a cure notice was not issued to the Plaintiff because of the unique nature of the situation involving a returned check for payment made through the City Clerk's Office. (Document 8-5.) The City Treasurer further indicated that the City Treasurer's Office accidently sent Mr. Smith a cure notice (the standard procedure for other returned checks), due to failing to identify Mr. Smith as a candidate for Municipal Court Judge. (Am, Compl. ¶ 46)

began the process of distributing absentee ballots on March 27, 2026[10], the very day the Plaintiff filed this action.   The primary election occurred on May 12, 2026.[11]

On April 6, 2026, this Court issued a *Memorandum Opinion and Order* (Document 12) denying the Plaintiff's request for a preliminary injunction, finding that the *Purcell* principle instructed against the issuance of an injunction given that the election was fast approaching and certain aspects of the election were underway.   The Court further declined to address Kanawha County Clerk's motion to dismiss when it ruled on the Plaintiff's request for injunctive relief.[12] After this Court denied the Plaintiff's requested preliminary injunction, the Plaintiff filed a motion for reconsideration on April 7, 2026, which this Court denied the following day after finding that the same legal basis underlying its *Memorandum Opinion* applied.

Thereafter, the Plaintiff filed an Amended Complaint (Document 19) on April 16, 2026, wherein he included, in addition to his request for injunctive relief, a request for nominal and compensatory damages, as well as pre- and post-judgment interest, attorney's fees, and costs.   The City Defendants now seek to dismiss the Plaintiff's amended complaint.[13]

---

[10] Additionally, the Board of Ballot Commissioners, which is the office responsible for proofing and printing ballots, began proofing ballots on or about March 1, 2026, and on March 27, 2026, began printing ballots to be distributed to the Kanawha County Clerk's Office.   *See* W. Va. Code § 3-3-11(a); *see also* Election Duties and Responsibilities Quick Reference, https://sos.wv.gov/FormSearch/Elections/Informational/County%20Quick%20Reference.pdf.
[11] *See* 2026 Elections Calendar, West Virginia Secretary of State's Office Elections Division, https://sos.wv.gov/media/467/download?inline= (accessed May 27, 2026).
[12] The Court specifically declined to address the County's motion to dismiss when ruling on the Plaintiff's motion for injunctive relief given the nature of this action, and to provide the Plaintiff an opportunity to appeal this Court's ruling prior to dismissing his claims.
[13] The Court initially entered judgment in favor of the Defendants after issuing a *Memorandum Opinion and Order* (Document 30) on May 6, 2026, dismissing the Plaintiff's amended complaint after finding that the Plaintiff would not be entitled to injunctive relief due to the *Purcell* principle, nor his requested monetary relief because of the City Defendants' sovereign immunity.   However, after the Plaintiff filed a motion to alter or amend judgment, the Court recognized that it errored in finding that the City Defendants were entitled to sovereign immunity.   Accordingly, the Court issued an *Order* (Document 33) vacating its initial *Judgment Order* (Document 31) and partially vacating its *Memorandum Opinion* (Document 30) as it related to the Plaintiff's requested monetary relief but leaving the dismissal of the Kanawha County Clerk's Office intact.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or

6

arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'"   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The City Defendants argue that the Plaintiff cannot establish a claim for monetary damages because courts have routinely held that monetary compensation is not available in election cases. They further argue that even if monetary damages were available, they were named in their official capacities and qualified immunity barred any claim for monetary damages.[14]   The City

---

[14] The City Defendants, citing *Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995), indicate that Courts will construe a Plaintiff's request for monetary damages against government officials as an indication that suit was brought against those government officials in their personal capacities. However, here the Plaintiff has specifically named the Defendants in their official capacity.

7

Defendants assert that the Plaintiff has failed to allege valid equal protection, denial of ballot access, due process, and municipal liability claims.   They also argue that at a minimum Defendant Goodwin should be dismissed because the Plaintiff has failed to allege a cognizable claim against her.

The Plaintiff asserts that monetary damages are not barred by *Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986), and that qualified immunity is not applicable given that Defendants Goodwin and Cary were named in their official capacities.   The Plaintiff contends that he properly alleged valid equal protection, ballot-access, due process, and municipal liability claims.   He contends that he has properly alleged a claim against Defendant Goodwin because he alleged "particularized conduct. . . against the executive officer of the municipal entity," and that, because he brought suit against Defendant Goodwin in her official capacity, it "is, in legal substance, a suit against the City, which is and remains a Defendant."   (*Id.* at 19.)

By law, at the very least, the Plaintiff could be entitled to nominal damages if he prevailed on his claims.[15]   *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 290-92 (2021); *see also Wells v. Johnson*, 150 F.4th 289, 305 (4th Cir. 2025) (explaining that "plaintiffs who have suffered past injuries but do not want (or cannot get) traditional remedies like compensatory damages usually turn to another remedy: nominal damages").   Therefore, the Court addresses the Plaintiff's claims below.[16]

---

[15] Given the findings below, the Court declines to decide whether the Plaintiff would be entitled to compensatory damages.

[16] The Court does not address whether the individual City Defendants would be entitled to qualified immunity because the Plaintiff named those Defendants in their official capacities.   *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (stating that government officials sued in their official capacities are not entitled to qualified immunity).

(A)    *Equal Protection*

The City Defendants argue that the Plaintiff and Mr. Smith are not similarly situated. Specifically, they assert that Mr. Smith submitted his certificate of announcement and accompanying filing fee on the first day of the filing period and his filing fee was returned during the filing period, which would have permitted him to cure during the filing period, rather than February 2, 2026, but for the City's mistake. They assert that the Plaintiff, on the other hand, deposited his certificate of announcement on the last day of the filing period and his filing fee was returned after the filing deadline, leaving him with no opportunity to cure. The City Defendants also argue that even if the Plaintiff is similarly situated to Mr. Smith, the City's actions were rational and reasonable under the circumstances. Specifically, they contend that "[t]he filing fee is required to be paid prior to the filing deadline, and such requirement must be uniformly and equitably applied," and that a candidate can cure so long as payment is received during the filing period. (City Defs.' Mem. at 12.) They claim that the Plaintiff effectively "denied himself the opportunity to cure based upon the last-minute timing of his filing." (*Id.* at 13.) The City Defendants argue that in the case of Mr. Smith, he was permitted to cure his payment on February 2, 2026, because "he was not timely and properly notified while there was time to cure, and further was incorrectly notified that he had ten (10) days from the date of the notice." (*Id.*) The Defendants contend that the "Plaintiff was not misinformed or subject to such an error." (*Id.*)

The Plaintiff argues that he and Mr. Smith are similarly situated. Specifically, he claims that both he and Mr. Smith filed for municipal office in the same election cycle, both tendered personal checks for the filing fee, both checks were returned, and both candidates were ready to cure. He further asserts that the City's distinguishing characteristics are irrelevant because "the

9

relevant challenged action is the City's discretionary post-deadline cure decision." (Pl.'s Resp. at 6.) The Plaintiff contends that he has sufficiently alleged that he and Mr. Smith were treated differently by alleging that Mr. Smith made a post-deadline cure that the City accepted, and that the City refused to allow the Plaintiff to cure. The Plaintiff further asserts that he properly alleged sufficient discriminatory animus. Specifically, he points to allegations in his complaint related to City Staff Attorney Tiffany Redman concealing the Plaintiff's returned check, the Treasurer's Office's failure to issue a cure notice as it did with Mr. Smith, "the unsigned, unprocessed certified-mail envelope bearing four times the correct postage and never scanned through the postal service," the City's removal of the Plaintiff from its public candidate listing after the ballot drawing, and Deputy City Clerk Nicole Smith's notarization of Defendant Goodwin's Certificate of Announcement. (Pl.'s Resp. at 8.)

The Fourteenth Amendment of the United States Constitution provides that "no state shall. . . deny to any person within its jurisdiction the equal protection of the laws."[17] U.S. Const. Amdt. 14. To survive a motion to dismiss on an equal protection claim, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that the Equal Protection Clause protects "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute

---

[17] The Court notes that the Fourth Circuit typically considers equal protection claims under the *Anderson/Burdick* framework, which is further outlined below, when such claims are asserted in tandem with ballot access claims under the First and Fourteenth Amendments. *See Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 716-17 (4th Cir. 2016); *Pisano v. Strach*, 743 F.3d 927, 934 (4th Cir. 2014). However, the Fourth Circuit has also considered such claims separately when doing so would be useful and would offer clarity. *See Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 180 n.2 (4th Cir. 2017).

or by its improper execution through duly constituted agents"). "Discriminatory animus cannot be established simply by showing 'that a benefit was denied to one person while conferred to another.'" *SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Va.*, 91 F.4th 715, 720 (4th Cir. 2024) (quoting *Sylvia Dev. Corp. v. Calvert Cnty.*, Md., 48 F.3d 810, 819 (4th Cir. 1995)). Rather, a plaintiff must demonstrate "that the disparate treatment was intentionally selected to produce 'adverse effects upon an identifiable group' or individual." *Id.* (quoiting *Wayte v. United States*, 470 U.S. 598, 610 (1985)). To do so, a plaintiff can "provide facts that establish the decisionmaker intended to disadvantage a particular person or class," that there is "a pattern of historical discrimination intended to disadvantage a particular person or class," or that there are "statements in the contemporaneous record that evince a discriminatory purpose." *Id.* (citing *Sylvia*, 48 F.3d at 819).

The Court finds that the Plaintiff's allegations are insufficient to plausibly demonstrate that he is similarly situated to Mr. Smith. First, as alleged in the Amended Complaint, Mr. Smith's check was returned during the filing period, while the Plaintiff's check was returned after the filing deadline. This necessarily placed the candidates in different positions regarding the ability to cure within the applicable deadlines. Second, and as a result, Mr. Smith received a cure notice from the City Treasurer's Office during the filing period, while the Plaintiff did not.[18] (¶ 29, ¶ 45 Am. Compl.) Although Mr. Smith did not cure until after the filing deadline, he did so on the next business day after receiving the cure notice providing him with a 10-day cure window. Further, although the Plaintiff's allegations assert that he and Mr. Smith are similarly situated due to both

---

[18] The Plaintiff's allegations frame Mr. Smith receiving a cure notice as part of the unequal treatment. However, a cure notice sent within the filing period does not suggest that a similar notice must be sent after expiration of the deadline. In addition, as alleged in the Amended Complaint, the Defendants indicate that a clerk erred in sending the form cure notice to Mr. Smith.

candidates requiring post-deadline cures, the time periods in which both candidates attempted to cure are drastically different. Mr. Smith cured his payment on February 2, 2026, while the Plaintiff offered to cure on February 26, 2026, and again on March 5, 2026, a significant difference when considering the election timeline.[19]  Because these factors demonstrate that the Plaintiff and Mr. Smith were not similarly situated, the Plaintiff has failed to allege a valid equal protection claim.

Moreover, the Court finds that the Plaintiff has not plausibly alleged that the City's decision was the product of intentional and arbitrary discrimination. The Plaintiff has not sufficiently alleged that the decision to allow Mr. Smith to cure, while not allowing him to do the same, was made because of some discriminatory animus towards the Plaintiff.[20]  Rather, his allegations demonstrate that because Mr. Smith received a cure notice from the City Treasurer's Office, conveying incorrect information, the City honored that cure notice. Further, the Plaintiff did not receive the same incorrect cure letter as Mr. Smith did.[21]  The City ultimately did not allow the Plaintiff to cure.[22]

---

[19] Although the Plaintiff's allegations assert that there was a delay in his receiving notice of his returned check given that his check returned on February 12, 2026, there was also a delay in Mr. Smith receiving the cure notice. Specifically, Mr. Smith's check was returned on January 22, 2026, and the City Treasurer's Office sent him a cure notice on January 28, 2026. (Am. Compl. at ¶¶ 44-45.)  If the City Treasurer's Office utilized the same procedures it did with Mr. Smith, the earliest the Plaintiff would have likely received notice would have been around February 18, 2026, which is still 16 days after Mr. Smith cured and 18 days after the deadline.

[20] The City, after confirming with the West Virginia Secretary of States Office, ultimately decided to accept the Plaintiff's Certificate of Announcement sent through UPS, (Am. Compl. at ¶¶ 16-18), even though W. Va. Code § 3-5-7 requires that mailed certificates of announcement "be postmarked by the United States Postal Service."  W. Va. Code § 3-5-7(c).

[21] Although it appears that the City Treasurer's Office sent Mr. Smith a cure notice that incorrectly indicated he had a 10-day cure window, the Plaintiff would not have been entitled to such a cure notice because his check returned after the filing deadline.

[22] The Plaintiff was aware that if his "check is returned for lack of funds, unsigned or does not contain sufficient information, [his] candidacy will not be certified".  This was included in the instructions that accompanied the Certificate of Announcement form.  (Document 19-1, Exhibit G.)

Although the Plaintiff makes several allegations, which he contends demonstrate sufficient animus towards him, none of those allegations are sufficient to demonstrate intentional, arbitrary discrimination.   City Staff Attorney Tiffany Redman's failure to mention the Plaintiff's returned check when responding to his FOIA request does not demonstrate discriminatory animus.   Also, the Treasurer's Office's failure to issue a cure notice to the Plaintiff as it did with Mr. Smith is insufficient to support discriminatory animus given that the Plaintiff's check was returned after the filing deadline.   Further, the City's removal of the Plaintiff from its public candidate listing after the ballot drawing and after his check had been returned is not indicia of discriminatory animus.

Next, the alleged anomalies related to the mailing of the Plaintiff's notice that his check bounced do not demonstrate animus.   The envelope containing the notice, received by the Plaintiff, was postmarked on February 19, 2026.   (Document 19-1, Exhibit E.)   To the extent the Plaintiff claims discriminatory animus by the City due to the delay in the Plaintiff receiving notice after his check bounced and the City choosing not to provide such notice through phone or email, the same falls woefully short.   The notice the Plaintiff received indicated that his candidacy would not be certified due to payment not being received by January 31, 2026, (Document 19-1, Exhibit G), so it would not have made a difference whether he received the notice through phone or email, rather than through the mail.

Lastly, the fact that Deputy City Clerk Smith notarized Defendant Goodwin's Certificate of Announcement is not sufficient to allege that discriminatory animus played a role in the City's decision.   Although the Plaintiff also alleges that Defendant Goodwin issued a directive for an intelligence briefing to be obtained on the Plaintiff, she was not a "decisionmaker" as it relates to the administration of the election and there are no allegations that she played a role in the City's

13

decision.   *See Sylvia*, 48 F.3d at 819 n.2 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Katti v. Arden*, 161 F.4th 217, 226 (4th Cir. 2025) (stating that the Equal Protection Clause "keeps governmental *decisionmakers* from treating differently persons who are in all relevant respects alike." (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)) (emphasis added)).   Moreover, cumulatively these facts do not support animus given the alleged facts surrounding the filing and acceptance of the candidacy and the unpaid filing fee.

Because the Plaintiff has not plausibly alleged facts to support the claim that the City's decision was the result of intentional and arbitrary discrimination, he does not have a sustainable equal protection claim.   Therefore, this claim must be dismissed.

*(B)   Ballot Access*

Courts review ballot access restrictions under the Anderson-Burdick framework which sets forth the following standard:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justification for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) (internal quotations omitted); *see also Anderson*, 460 U.S. at 793 (stating that "[t]he inquiry is whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity'" (quoting *Clements v. Fashing*, 457 U.S. 957, 964 (1982))).

Here, however, the Plaintiff does not challenge an election law or regulation. He argues that he is not challenging the filing fee or the cure procedure, but rather "the City's selective

administration of those rules, with cure permitted for one similarly situated candidate and refused for Plaintiff in the same election cycle on the same deficiency." (Pl.'s Resp. at 15.)   Given the Plaintiff's characterization, at its core his Ballot Access claim is simply duplicative of his Equal Protection claim.   In other words, the Plaintiff does not challenge the applicable statute claiming an undue burden but challenges what he perceives to be the City's disparate treatment in refusing to accept his offer to "cure" his returned check after the filing deadline.   For the reasons previously stated with respect to the Equal Protection claim, the Ballot Access claim must be dismissed.

(C)     *Due Process*

The City Defendants, relying on the Supreme Court's holdings in *Taylor v. Beckham*, 178 U.S. 548 (1900) and *Snowden v. Hughes*, 321 U.S. 1 (1944), argue that the Plaintiff does not have a property or liberty interest in elected office.   They argue that courts have extended those holdings not only to an interest to hold office after an election, but also an interest to appear on the ballot.   The City Defendants assert that in any event, even if the City's actions are considered an irregularity or mistake in election administration, the Plaintiff has failed to make a clear showing that the City's actions give rise to a procedural due process claim.

The Plaintiff, relying on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), asserts that independent sources can give rise to property interests and that he properly alleged such an independent source by alleging that the City affirmatively recognized the "Plaintiff's candidate status through repeated official acts over a three-week period."   (Pl.'s Resp. at 17, citing Am. Compl. at ¶¶ 20-27, 73.)   He argues that *Taylor* and *Snowden* are inapplicable to his circumstances because they addressed the right to hold public office after an election, rather than a "challenge to revocation of an affirmatively conferred candidate status."   (*Id.* at ¶ 16.)   The Plaintiff argues that

the minimal process that he was owed by the City was the same process provided to Mr. Smith, prompt notice and an opportunity to cure.

The Due Process Clause of the Fourteenth Amendment provides that "no state shall…deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amdt. 14.  "To establish a procedural due process violation under § 1983, [a] plaintiff[] must show (1) that [he or she was] deprived of a cognizable liberty or property interest (2) through some form of state action (3) with constitutionally inadequate procedures."[23]  *Todman v. Mayor and City Council of Baltimore*, 104 F.4th 479, 487 (4th Cir. 2024) (citing *lota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The Court finds that the Plaintiff has not plausibly pled that he was deprived of a property or liberty interest.  The Supreme Court, in *Snowden v. Hughes*, 321 U.S. 1 (1944), has held that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause."  321 U.S. at 7 (citing *Taylor v. Beckham*, 178 U.S. 548 (1900)).  Courts have further applied this holding from *Snowden* to candidates

---

[23] The Court notes that some courts, both within this circuit and outside, have applied the *Anderson-Burdick* framework to procedural due process challenges in the election context.  *See Ortiz v. N.C. State Bd. of Elections*, No. 5:24-CV-00420-BO, 2024 WL 3764561, at *14 (E.D. N.C. Aug. 12, 2024) (collecting cases).  However, the Fourth Circuit has yet to address which standard applies in this context.  For purposes of this case, the Court finds that the traditional due process standard set forth in *Mathews* is more appropriate.  Many of the cases that have applied the *Anderson-Burdick* framework to procedural due process challenges involved voting requirements, thus directly implicating the right to vote, rather than filing requirements for candidates.  *See Arizona Democratic Party v. Hobbs*, 18 F.4th 1179 (9th Cir. 2021) (involving challenge to election-day deadline for voters who fail to sign affidavit attesting that the voter is the one who personally cast absentee ballot); *Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020) (involving challenge to Texas's signature-comparison and voter-notification procedures for absentee ballots); *New Georgia Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020) (involving challenge to Georgia's absentee ballot deadline); *Voto Latino v. Hirsch*, 712 F.Supp.3d 637, 646 (M.D. N.C. 2024) (involving challenge to new "North Carolina rules for voters who register and cast a ballot during the State's seventeen-day same-day registration ("SDR") period"); *Democracy N.C. v. Hirsch*, No. 1:23-CV-878, 2024 WL 3764561 (M.D. N.C. Apr. 2, 2024) (same); *Democratic Party of Va. v. Brink*, 599 F.Supp.3d 346 (E.D. Va. 2022) (involving challenge to Virginia's full social security number requirement to register to vote and notice and cure process for absentee ballots).

16

seeking placement of their name on a ballot for elected office.  *See, e.g.*, *Wilson v. Birnberg*, 667 F.3d 591, 598 (5th Cir. 2012) (holding that the Plaintiff, who sought to run in the Democratic primary for county commissioner and was excluded from the ballot due to his failure to include his residential address in his application, "lack[ed] an interest protected by procedural due process"); *Summers v. Remus*, No. 2:24-cv-2060-MSN-cgc, 2025 WL 2797072, at *7 (W.D. Tenn. Sept. 30, 2025) (finding that the plaintiff, who was disqualified from the ballot after filing petition to run for court clerk and received confirmation that he met all the requirements, did not have a valid procedural due process claim because "his claim that he has a constitutionally protected property interest related to his right to apply to be placed on the ballot" was foreclosed by *Snowden*); *Lupo v. Hargett*, No. 3:24-cv-01088, 2024 WL 4583524, at *6 (M.D. Tenn. Oct. 25, 2024) (finding that the "Plaintiffs have no constitutionally protected interest in their placement on the ballot in any capacity, and therefore their Fourteenth Amendment due process claim necessarily fails").[24]  Likewise, the Court finds that the Plaintiff had no protected property or liberty interest in being placed on the ballot for mayor, and therefore, does not have a valid procedural due process claim.   Thus, this claim must be dismissed.

---

[24] The Plaintiff, relying on *Cleaveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), asserts that these cases, as well as the Supreme Court's holding in *Snowden*, are inapplicable because, unlike in those cases, the City conferred candidate status to the Plaintiff by recognizing him as such, and thus, that conferral is an independent source that created a property interest.   However, despite the expansive definition of property interest adopted by the Supreme Court since *Snowden* was decided, courts, including the Fifth Circuit in *Wilson*, have rejected that such an expansive view is applicable to candidates seeking elected office since the Supreme Court has yet to overrule *Snowden*.   *See, e.g.*, *Velez v. Levy*, 401 F.3d 75, 86-87 (2d Cir. 2005) (explaining that while the Supreme Court "has adopted a more expansive approach to identifying 'property' within the meaning of the 14th Amendment," which "cast[s] a shadow over *Taylor* and *Snowden*, 'it is [the Supreme] Court's prerogative alone to overrule one of its precedents'" (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997))); *Wilson*, 667 F.3d at 598 ("Though these intervening cases may cast a shadow over *Taylor* and *Snowden*, it is the Supreme Court's prerogative alone to overrule one of its precedents." (quoting *Velez*, 401 F.3d at 87) (internal quotations omitted)); *Guzman Flores v. Coll. of Optometrists*, 106 F.Supp.2d 212, 214 (D. P.R. 2000) (explaining that "[a]lthough *Roth* and *Sindermann* present an expansive definition of property interest, the Supreme Court squarely addressed the issue now before the Court and held that there was no due process right to seek election to public office").

17

(D)     *Municipal Liability*

Given that the Plaintiff cannot demonstrate that he has valid equal protection, denial of ballot access, or due process claims, the Court finds that he cannot establish a valid municipal liability claim.   *See Anderson v. Caldwell Cnty. Sheriff's Office*, 524 Fed.Appx. 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee" (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam))); *see also Johnson v. Baltimore Police Dep't*, 500 F.Supp.3d 454, 459 (D. Md. 2020) ("It is axiomatic that a *Monell* claim cannot lie 'where there is no underlying constitutional violation by the employee'" (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001), *abrogated on other grounds by*, *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Accordingly, this claim must be dismissed, as well.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *City of Charleston Defendants' Motion to Dismiss Plaintiff's First Amended Verified Complaint* (Document 23) be **GRANTED**.   The Court's previous *Memorandum Opinion and Order* (Document 30) remains in effect to the extent it granted Defendant Kanawha County Clerk's motion to dismiss.

Thus, no claims remain pending, and the Court **ORDERS** that the *First Amended Verified Complaint* (Document 19) be **DISMISSED**, that any pending motions be **TERMINATED AS MOOT,** and that this matter be **REMOVED** from the Court's docket.

18

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    June 10, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

19